## Richmond

### Harry L. Snyder

### v.

### Joseph L. Exum, Jr. and Jimmie R. Exum

Record No. 811674.

April 27, 1984.

Present: Cochran, Poff, Compton, Russell, Stephenson, and Thomas, JJ., and Gordon, Retired Justice.

*Howard I. Legum (Morris H. Fine; Fine, Fine, Legum & Fine,* on brief), for appellant.

*Edwin C. Kellam (Kellam, Pickrell and Lawler,* on brief), for appellees.

THOMAS, J., delivered the opinion of the Court.

This appeal focuses upon the meaning of a rent acceleration clause in a written lease. We must first determine whether the clause is mandatory or optional. Once we resolve that question, we must then decide whether the lessor, in suing for rent from a defaulting lessee, was required, in light of the acceleration clause, to institute a single suit to collect all the rent at one time or whether he had the option to bring multiple suits to collect the rent as it accrued.

Harry L. Snyder owned an office building in Virginia Beach. On July 24, 1979, Snyder entered into a lease with Joseph L. Exum, Jr., and Jimmie R. Exum (collectively, "Exum"). The lease term was two years, beginning August 7, 1979, and ending August 7, 1981. Rent for the two-year term was $55,200, payable monthly, at the rate of $2,200 per month during the first year, and $2,400 per month during the second year.

Exum abandoned the premises on February 26, 1980, having paid rent thereon through the end of that month. In July 1980, Snyder sued Exum for five months' rent. The court entered judgment for Snyder on February 3, 1981.

Two days later, on February 5, 1981, Snyder again sued Exum. In this second suit, Snyder sought $28,800, which he alleged represented rent accrued since the first suit plus rent due for the balance of the lease term. Exum filed a demurrer on the ground that the acceleration clause in the lease provides that, upon default, the full amount due for the term of the lease immediately becomes due and payable. Exum alleged further that by failing to sue for the full amount of rent in the first suit, Snyder waived the balance of the rent and was thus barred from bringing a second suit. Exum submitted that to permit the second suit would amount to allowing Snyder to split a single cause of action into multiple parts in violation of well-settled principles. The trial court agreed with Exum, sustained the demurrer, and dismissed the suit. Finding the trial court's conclusion to be correct, we will affirm its judgment.

The provision in the lease that is central to the resolution of this appeal reads in pertinent part as follows:

> In the event of any . . . default by Lessee, *all of the rent for the then current term of this lease shall become due and payable, whether or not such rent has accrued,* and Lessor, Realtor, and their agents shall have the right to re-enter and resume possession of the property, . . . to distrain for rent and also to re-let the property as agent for Lessee for any unexpired balance of the then current term and receive the rent arising from such re-letting. No such entry or re-letting shall constitute either a surrender or termination of this lease except at the option of Lessor or deprive Lessor of any other right, action, or proceeding for rent, possession, or damages by statute or otherwise.

(Emphasis added.) There is no dispute that Exum defaulted. The dispute centers on whether, upon such default, all the rent became due at once or whether it became due, piecemeal, at the discretion of the lessor. The trial court ruled that "the clear and explicit intention of the parties was set out in the lease" and that it was their intention that upon default all the rent became due at once.

The trial court thus concluded that the lessor did not have the option to sue for the rent in piecemeal fashion.

On brief and in oral argument, Exum submits that Snyder's option argument requires the court to transform the word "shall" into the word "may." Exum argues further that absent such a transformation, Snyder's appeal must fail. We think Exum's analysis of the task facing Snyder is accurate. Moreover, we think it significant that Snyder does not dispute Exum's characterization; Snyder's counsel admitted in oral argument that the lease does not state explicitly that the landlord has an option with regard to accelerating rent payments.

■ Despite the apparent difficulty facing Snyder, he contends he is justified in his position for two reasons. He argues first that as a general principle of landlord-tenant law "the invocation of the acceleration clause . . . is optional at the decision of the landlord." In support of this so-called general principle, he relies on comment K to § 12.1 of the Restatement (Second) Property, Landlord and Tenant (1977). Yet, in making this argument, he ignores express language in the Restatement that the guidelines stated therein are subject to the agreement of the parties. Subsections (2) and (3) of § 12.1, to which comment K relates, both begin as follows: "Except to the extent the parties to a lease validly agree otherwise. . . ." Here, whatever may be said for the Restatement, the parties agreed otherwise. Thus, the trial court correctly focused its analysis upon the agreement of the parties instead of allowing itself to become sidetracked by Snyder's arguments on the basis of principles that may or may not be general but which are, in this case, inapplicable.

■ In his second argument, Snyder contends that the last sentence of the acceleration clause gives him an option regarding acceleration of rent. We find no merit in this argument. That sentence makes no mention of the acceleration of rent. All it does is provide that, even if the lessor re-enters or re-lets the premises, the lessor will not forfeit his right to accelerated rent. This means that even if the lessor finds a new tenant he can still collect from the defaulting lessee all the rent provided for in the lease.* In our opinion, instead of giving Snyder an option regarding acceleration of rent, the last sentence of the provision underscores the intention

---

* Although at trial a question was raised as to the validity of the acceleration provision on the ground that it operated as a penalty, that issue was not raised in this appeal and we make no ruling concerning it.

of the parties that where there is a default all the rent will immediately become due.

■ With regard to the question whether the provision was optional or mandatory, we conclude that the provision was written in clear and unequivocal language and that it means what it says: upon default all the rent, whether accrued or not, "*shall* become due and payable." (Emphasis added.) This language is the language of command and was mandatory, not optional. Were we to reach a different conclusion we would have to distort reality and, in effect, make a new contract for the parties. This we will not do. *See Wilson* v. *Holyfield*, 227 Va. 184, 313 S.E.2d 396 (1984); *Magann Corp.* v. *Electrical Works*, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962). Thus, at the time Snyder filed his first suit the full amount of the rent was due.

■ Since Snyder only sued for a portion of the rent, although it was due in full, the trial court correctly concluded that in filing his second suit, Snyder improperly split his cause of action. *Jones* v. *Morris Plan Bank*, 168 Va. 284, 191 S.E. 608 (1937), states the principle that must guide us here. That case concerned an acceleration clause in an installment note. And, contrary to Snyder's arguments, we see no valid distinction between an acceleration clause in a lease and one contained in a note. *See Belnord Realty Co.* v. *Levison*, 204 A.D. 415, 418, 198 N.Y.S. 184, 186 (1923).

In *Jones* we concluded that all the installments were due at the time of the first suit. Then we wrote as follows: "All installments having matured at the time the action was begun, under well settled principles, those not embraced in that action are now barred." 168 Va. at 291, 191 S.E. at 610. We went on to describe the preclusive effect of the first suit on efforts to bring a second suit:

> The law does not permit the owner of a single or entire cause of action or an entire or indivisible demand, without the consent of the person against whom the cause or demand exists to divide or split that cause or demand so as to make it the subject of several actions. *The whole cause must be determined in one action.* If suit is brought for a part of a claim, a judgment obtained in that action precludes the plaintiff from bringing a second action for the residue of the claim, notwithstanding the second form of action is not identical with the first, or different grounds for relief are set forth in the second suit.

*Id.* (quoting from 1 Am. Jur. *Actions* § 96 (1936)) (emphasis added). We next set forth the rationale for the rule.

> The rule exists mainly for the protection of defendant, is intended to suppress serious grievances, and is applied to prevent vexatious litigation and to avoid the costs and expenses incident to numerous suits on the same cause of action. It is based on the maxims, *Interest reipublicae ut sit finis litium* (It concerns the commonwealth that there be a limit to litigation), and *Nemo debet bis vexari pro una et eadem causa.* (No one ought to be twice vexed for one and the same cause).

168 Va. at 292, 191 S.E. at 610 (quoting from 1 C.J.S. *Actions* § 102 (1936)). The principles and rationale announced in *Jones* apply with equal force in this appeal. Consequently, we hold that Snyder improperly attempted to split a single cause of action.

In light of the foregoing, the judgment of the trial court will be

*Affirmed.*